PRICE, Judge.
This is an appeal from a judgment awarding damages for breach of contract. St. . Joáeph Elevator Company, Inc., brought this action alleging it accepted in writing on September 2, 1972, the offer by Stanton Pearson to sell 7,000 bushels of soybeans at $3.26 per bushel to be delivered to the plaintiff’s elevator during the months of October and November, 1972. Plaintiff alleges only 2,135 bushels were delivered in accordance with the contract and that it suffered a loss of $1,605.45 due to the failure of defendant to deliver the remaining 4,865 bushels specified in the contract.
Defendant entered a general denial to plaintiff’s allegations and after trial on the merits the trial court rendered judgment for $1,141.51, and prorated the costs equally between the parties.
Plaintiff has answered this suspensive appeal perfected by defendant requesting the judgment be amended to award the full sum sued for.
No transcript of testimony was prepared in this matter. Both parties have indicated they are content to rely on the recitation made by the trial judge in his written reasons for judgment as an accurate presentation of the facts established on trial of the cause.
We therefore quote the pertinent portions of the judge’s reasons depicting the operative facts and findings of the court as follows:
“On September 2, 1972, the parties entered into a contract, numbered ‘69’, and entitled ‘Confirmation of Purchase’, that provided that Stanton Pearson as seller would deliver FOB 7,000 bushels of soybeans to the plaintiff elevator for a price of $3.26 per bushel during October and November, 1972. Besides the signatures of the parties, the only other written provisions of the contract are:
‘Application of shipment will be made on the oldest open contract with the ■ same seller, in absence of any other agreement.
Any underfill or overfill will be settled at market value based upon the close on date of unload. Seller warrants that the grain to be delivered hereunder will be delivered free and clear of any liens. Seller guarantees all commodities applied against this contract to be free of crotalaria.’
“Plaintiff alleges the only deliveries pursuant to the contract by defendant were between October 5, 1972 and November 10, 1972, amounting to 2,135 bushels, leaving a balance of 4,865 bushels undelivered. As a result of defendant’s failure to deliver plaintiff claims damages to the extent of $1,605.45.
“Neither party disputes the date nor the execution of the contract. The books and records of the parties seem to be in accord as to the number of bushels of beans sold by defendant to plaintiff during the soybean harvest season in 1972, but they are at great odds as to what shipments or deliveries of soybeans should be applied to the booking contract.
“The records of plaintiff only credit ten loads of beans to the contract. The total number of bushels represented by these deliveries is 2,135 bushels when rounded to the next whole number. Plaintiff claims 33 cents per bushel on the balance of 4,865 bushels not delivered on the 7,000 bushel contract.
*807 “Mr. B. Oliver Berry, President of the plaintiff corporation, testified that the operating procedure at the elevator was to give the producer the option of designating whether the deliveries were to go on the ‘book’. or not as long as he had beans in the field to fulfill his contract. This option was exercised as each load was delivered to the scales at the elevator, by the operator inquiring of the truck driver whether to apply this load to the book or not. Unless the driver specified the beans were to go on the contract, they were not applied to same, and the farmer’s account received credit for the current market price rather than the ‘booked’ price. After hearing the parties and witnesses I am convinced that both parties handled the application of shipments loosely, to say the least. Since it is obvious that the elevator/buyer is in a better position to haye the booking contract filled so long as deliveries are being made because the buyer makes out and keeps the records, any loss suffered from misapplication of shipments to the contract should, in my opinion, be borne by the buyer.
“The evidence shows that defendant or his representatives, truck drivers, tenants, or partners, delivered 3,741.03 bushels of beans in the month of September after the contract was executed on September 2, 1972, and that 2,333.25 bushels were delivered in the months of October and November for which defendant was paid the market price, which in all instances, except one, was in excess of the contract price of $3.26 per bushel.
“Four loads of beans raised on defendant’s farm were shown on the plaintiff’s records to belong to H. P. Feroben and involved 1,036.73 bushels. The contract was not credited with receipt of these beans. However, they are included in the number of bushels delivered in October and November by the defendant and not applied on the contract.
“The analysis of the bean sales of defendant as made by plaintiff’s counsel in brief, as well as the work sheet of defendant (Ex. D-l) reflect that defendant and his representatives delivered 8,209.27 bushels of beans to plaintiff in the 1972 harvest season, for which defendant or his representative received $25,945.32. Defendant contends he fulfilled the contract and was entitled to 7,000 bu. x $3.-26 = $22,9820.00, and that since he delivered 8,209.27 bushels throughout the whole season and received only $25,945.-32, which he concedes is $3,125.32 over payment, his account should be adjusted to show an overfill of 1,209.27 bushels (8,209.27 bu. - 7,000 bu.) for which he should receive. $3.59 per bushel or the sum of (1,209.27 x $3.59) $4,341.27. Defendant then argues that after deducting the sum of $3,125.32 (the amount he was paid over the contract) from the sum he was due for overdelivery, $4,341.28, he is entitled to $1,215.96.
“Defendant’s calculations ignore the custom of deducting the moisture and foreign material from the base price. Although the contract is silent on this score, I am of the opinion that the custom prevails and, therefore defendant’s method is not acceptable. Since the dates of delivery are explicit, I find it impossible to credit the ‘booking contract’ with the bean deliveries in September. Defendant argued policies of other elevators relative to applying the shipments before and after contracted delivery dates, but no evidence was introduced at trial to prove this custom.
“Despite the fact that four of the delivery tickets dated during the effective period of the contract failed to show the contract credited and four other tickets are in the name of H. P. Feroben, I am convinced that plaintiff could have best avoided this, and the contract should be credited with all deliveries during October and November, which gives defendant credit on the contract for 4,468.24 bushels, leaving a shortage on the con *808 tract of 2,531 bushels, when rounded. The parties seem to agree that the market price on the last day of November was $3.59 and that that date is the appropriate one to settle the underfill or overfill. The difference between the booked price of $3.26 and the market price at the end of November, $3.59, is 33 cents per bushel. Thus, plaintiff is entitled to be awarded judgment for $835.23 (2,531 bu. x .33).
“Since the plaintiff paid defendant the market price on 8 loads of beans, which have been applied to the contract, and these payments exceed the book price, after dockage, by the sum of $306.28, this sum must be refunded.
“Accordingly, there will be judgment in favor of plaintiff for the aggregate sum of $1,141.51 ($835.23 + $306.28).”
Defendant’s specification of errors questions the correctness of the trial court’s interpretation of the written contract, the failure of the trial judge to give defendant credit on his contractual obligation for beans delivered in September, and in awarding plaintiff damages in the absence of adequate proof to show actual loss.
Defendant advances three arguments why he should be credited with all beans delivered in September, thus fulfilling his obligation under the contract:
1. A custom prevails in the locality by all operators of grain elevators to allow early delivery on booking contracts. The trial judge rejected this proposition for lack of any evidence to support it. We find no error in this regard.
2. The contract provides “application of shipment will be made on the oldest open contract with the same seller in absence of any other agreement.” This provision defendant contends requires all beans delivered after execution of the contract on September 2nd, to be applied to the contract even though prior to October 1st. We understand the purpose of this provision to relate to situations where a farmer has entered into several separate booking contracts with the same elevator in one year, and therefore, it does not have the effect contended by defendant.
3.Defendant further relies on the provisions of La.C.C. Articles 2163 and 2166 relating to imputation of payments made by a debtor to the oldest debt or to the one the debtor would be most interested in discharging. These articles have in view situations involving multiple debts owed by one party to another and are not-applicable to the instant case where there is only a single contractual obligation. In reality, there was no debtor-creditor relationship involved here until such time as it was determined defendant had not delivered • the total quantity of beans called for by the contract during the period provided.
We find no error in the trial court’s finding that deliveries made during September should not be taken into consideration in computing the performance of defendant under the contract.
Defendant’s remaining contention that plaintiff has not sufficiently proven any actual loss to justify an award for damages is without merit. La.C.C. Article 1934, paragraph 5, provides in part:
“ * * * Where the parties, by their contract, have determined the sum that shall be paid as damages for its breach, the creditor must recover that sum >}C * * i}
The agreement under consideration provides “any underfill or overfill will be settled at market value based upon the close on the date of unload.”
*809 Evidence was presented showing the market price on the date of the close of the contractual period and this is sufficient to establish plaintiff’s damages.
Plaintiff contends th'at the judgment should be amended to increase the award from $1,141.51 to $1,605.45 as the trial judge erred in allowing defendant credit against the booking contract for those deliveries made in November which were not marked “book” and ticketed at the market price rather than the booked price. Further, the court is alleged to have improperly given defendant credit for the beans delivered by H. P. Feroben which were raised on defendant’s land. It is argued that Feroben was a tenant farmer who paid his rent by sharing a part of his crop with defendant and thus defendant had nothing to do with the beans delivered by Feroben. There is no testimony in the record to support this argument and we must accept the triai judge’s finding on this issue. Nor do we feel inclined to disturb the trial judge’s conclusion that all deliveries made in November should be credited to defendant’s account whether or not the tickets were marked “book.” It is apparent the evidence as depicted by the trial judge in his reasons for judgment was unclear as to whether the delivery tickets were marked in accord with defendant’s instructions. As we do not have this testimony before us for review, we are constrained to accept the trial judge’s conclusion in this regard.
The remaining issue complained of by plaintiff in answer to the appeal is the assessment of costs equally to each party by the trial judge. As plaintiff recovered only a portion of the amount sued for, there has been no abuse of the discretion of the trial court in assessment of costs.
For the foregoing reasons the judgment appealed from is affirmed. Costs of this appeal are to be prorated equally between appellant and appellee.